IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| OVIDIO A. ANDRADE and BARBARA ANDRADE, also known as OVIDIO A. DEANDRADE and BARBARA DEANDRADE,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>CHASE HOME FINANCE, LLC, successor by merger to CHASE MANHATTAN MORTGAGE CORPORATION, and CHASE MANHATTAN BANK USA, N.A.,<br><br>　　　　Defendants. | No. 04 C 8229<br><br>Judge Mark Filip |

MEMORANDUM OPINION AND ORDER

Plaintiffs, Ovidio A. Andrade and Barbara Andrade (collectively, "Plaintiffs"), bring suit against Chase Manhattan Mortgage Corporation ("Chase Mortgage"), which was succeeded through merger by Chase Home Finance ("CHF"), and Chase Manhattan Bank USA, N.A. ("CMBUSA") (collectively, "Defendants"). (D.E. 1 or "Complaint.")[1] Plaintiffs allege violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.* (*Id.*) The case is before the Court on Defendants' motion pursuant to 28 U.S.C. § 1404(a) to transfer this matter to the Eastern District of Pennsylvania, or in the alternative, to the District of New Jersey or the District of Rhode Island. (D.E. 15.) For the reasons set forth below, the motion is granted, and the case is transferred to the Eastern District of Pennsylvania.

---

[1] The various docket entries in this case are designated "D.E. __."

1

BACKGROUND

Plaintiffs are husband and wife and reside in Rhode Island. (Compl. ¶ 3.) Defendant CMBUSA is a corporation in the business of originating residential mortgage loans (*id.* ¶ 4); CMBUSA is incorporated under federal law and has its headquarters in Newark, Delaware. (D.E. 17, Ex. A, Declaration of Susan Sinn on May 9, 2005 ("Sinn Decl.") ¶ 3.) Defendant Chase Mortgage was a New Jersey corporation with its headquarters in Edison, New Jersey. (Sinn Decl. ¶ 4.) CHF, the successor by merger to Chase Mortgage, is a Delaware corporation with its executive headquarters in Iselin, New Jersey. (*Id.*) CMBUSA and CHF are subsidiaries of JPMorgan Chase & Company ("JPMorgan Chase"). (Compl. ¶ 4, 5.) JPMorgan Chase's domestic retail financial headquarters is located in Chicago, Illinois. (*Id.* ¶ 6.)

The complaint alleges that shortly before October 17, 2004, Plaintiffs received a solicitation in the mail ("Solicitation Letter") from one or more of the Defendants; the Solicitation Letter offered refinancing of Plaintiffs' home mortgage loan.[2] (*Id.* ¶ 7.) Plaintiffs called the number listed in the Solicitation Letter and stated that they were interested in obtaining refinancing. (*Id.* ¶ 8.) During this phone call, Plaintiffs were asked for various items of information and had their credit reports pulled. (*Id.*) The Complaint alleges that Defendants decided not to extend credit to Plaintiffs, relying at least in part on information contained in

---

[2] Defendants have denied many of the allegations in paragraphs 7 and 8 of the Complaint. (*See* D.E. 9 ¶¶ 7-8; *see also id.* ¶¶ 11-13 (denial of allegations that Defendants took an adverse action against Plaintiffs or determined not to extend them credit).) Therefore, Plaintiffs' representation in its response to Defendants' venue transfer motion that "[a]ll of these facts are uncontested"—(D.E. 47 at 2; *see also id.* at 3 ("Factual issues will only concern whether defendants can prove that their failure to include the proper disclosures was the result of a bona fide error"))—is mistaken. (*See also* D.E. 56 at 2 (summary of issues Defendants intend to raise and litigate).)

Plaintiffs' credit reports. (*Id.* ¶¶ 11, 12.) Plaintiffs received a letter dated October 17, 2004 ("Response Letter"), that informed them of Defendants' decision. (*Id.* ¶ 14 (citing Compl., Ex. A).)

Plaintiffs allege that Defendants' decision not to extend credit to them amounted to an "adverse action" as defined in 15 U.S.C. § 1681a(k), for which an adverse action notice was required under 15 U.S.C. § 1681m. (*Id.* ¶¶ 13, 16.) Plaintiffs allege that the Response Letter did not satisfy the notice requirements of 15 U.S.C. § 1681m (*id.* ¶¶ 17-19), and further allege that Defendants have a policy and practice of sending form letters similar to the Response Letter when they determine based on credit reports that they do not have loan products suitable for consumers. (*Id.* ¶ 19.) Accordingly, Plaintiffs claim that Defendants engaged in willful noncompliance with the requirements of the FCRA and therefore should be held liable under 15 U.S.C. § 1681n. (*Id.* ¶¶ 21, 22.)

Plaintiffs bring suit on behalf of a putative class, pursuant to Fed. R. Civ. P. 23(a) and (b)(3), consisting of "all persons who were sent a [letter similar to the Response Letter]. . . on or after a date two years prior to the filing of this action and before a date 20 days after the filing of this action." (*Id.* ¶¶ 24, 25.) Plaintiffs allege that there are at least 50 class members. (*Id.* ¶ 26.)

Defendants filed an answer to Plaintiffs' complaint with this Court on March 16, 2005. (D.E. 9.) Defendants have now moved to transfer this matter from the Northern District of Illinois to the Eastern District of Pennsylvania, or in the alternative, to the District of New Jersey or the District of Rhode Island. (D.E. 15.)

## LEGAL STANDARDS

Section 1391(b) of Title 28 provides, in relevant part, that venue properly rests in: (1) a

judicial district where any defendant resides, if all defendants reside in the same state; or (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred. *See* 28 U.S.C. §§ 1391(b)(1), (2); *see also Barela v. Experian Info. Solutions, Inc.*, No. 04 C 5144, 2005 WL 770629, at *1 (N.D. Ill. Apr. 4, 2005) (citing 28 U.S.C. § 1391(b)). For the purposes of venue analysis, a corporation is deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced. *See* 28 U.S.C. § 1391(c). When deciding a motion to transfer venue, the court must accept as true all of plaintiff's well-pleaded facts in the complaint, unless they are contradicted by affidavits or other appropriate evidence from the defendant. *See, e.g., The Heil Co. v. Curotto Can Co.*, No. 02 C 782, 2004 WL 725737, at *1 (N.D. Ill. Mar. 30, 2004) (citing *Plotkin v. IP Axess, Inc.*, 168 F. Supp. 2d 899, 900 (N.D. Ill. 2001)). Although a motion to dismiss for improper venue under Rule 12(b)(3) must be filed before the answer, a motion to transfer venue may be filed at any time. *See, e.g., Carter v. Clark Material Handling Co.*, No. 97 C 4424, 1998 WL 89244, at *2 (N.D. Ill. Feb. 17, 1998) (citation omitted).

Under 28 U.S.C. § 1404(a), "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a); *see, e.g., Biesek v. Soo Line R.R. Co.*, No. 03 C 5452, 2004 WL 609323, at *1 (N.D. Ill. Mar. 22, 2004). Precedent teaches that pursuant to Section 1404(a), a court may transfer a case where (1) venue is proper in both the transferor and transferee courts; (2) transfer is for the convenience of the parties and witnesses; and (3) transfer is in the interest of justice. *See, e.g., Georgouses v. NaTec Res. Inc.*, 963 F. Supp. 728, 730 (N.D. Ill. 1997) (citation omitted).

When evaluating the convenience of the parties and witnesses—which is sometimes referred to as the private interests at stake—a district court considers: (1) the plaintiff's choice of forum; (2) the situs of material events; (3) the relative ease of access to sources of proof; (4) the convenience of the witnesses; and (5) the convenience to the parties. *See, e.g., Coleman v. Buchheit, Inc.*, No. 03 C 7495, 2004 WL 609369, at *1 (N.D. Ill. Mar. 22, 2004) (citing *Plotkin*, 168 F. Supp. 2d at 902). In examining the interests of justice, or what are sometimes referred to as the public interest factors, the court focuses on the efficient administration of the court system, and considerations include "the court's familiarity with the applicable law, the speed at which the case will proceed to trial, and the desirability of resolving controversies in their locale." *Morris v. Am. Bioscience, Inc.*, No. 03 C 7525, 2004 WL 2496496, at *2 (N.D. Ill. Nov. 3, 2004) (citing *Von Holdt v. Husky Injecting Molding Sys. Ltd.*, 887 F. Supp. 185, 188 (N.D. Ill. 1995)). The weight accorded to each factor is committed to the sound discretion of the trial judge. *See, e.g., Cont'l Ins. Co. v. M/V Orsula*, 354 F.3d 603, 608 (7th Cir. 2003) (collecting cases).

Transfer under Section 1404(a) is not designed to merely shift inconveniences between equally situated parties; "rather, the overall balance of inconveniences, and the broader public interests at play, must clearly weigh in favor of transfer." *Barela*, 2005 WL 770629, at * 3 (collecting cases). The party seeking to transfer venue "'has the burden of establishing, by reference to particular circumstances, that the transfer forum is clearly more convenient' than the transferor court." *Technical Concepts L.P. v. Zurn Indus., Inc.*, No. 02 C 5150, 2002 WL 31433408, at *2 (N.D. Ill. Oct. 31, 2002) (quoting *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219-20 (7th Cir. 1986)).

DISCUSSION

I.      Proper Venue

As is often the case, the parties do not dispute for purposes of this motion that venue would be permissible in this judicial district and in the proposed transferee forum, the Eastern District of Pennsylvania. (*See, e.g.*, D.E. 17 at 5.) Accordingly, the salient question is whether the movants have met their burden of establishing the propriety of the proposed transfer. *See, e.g., Sornberger v. First Midwest Bancorp, Inc.*, No. 02 C 246, 2002 WL 1182121, at *1 (N.D. Ill. June 4, 2002) (citing *Coffey*, 796 F.2d at 219-20). The Court therefore proceeds to the analysis of the private and public interests implicated by the motion and the circumstances of the case.

II.     Private Interests

   A.   Plaintiff's Choice of Forum

Plaintiffs chose to bring their suit in the Northern District of Illinois, and generally, the plaintiff's choice of forum carries substantial weight. *See Wolford v. Am. Home Prods. Corp.*, 948 F. Supp. 47, 49 (N.D. Ill. 1996) (citation omitted). Defendants argue, however, that the circumstances of this case are such that Plaintiffs' choice of forum should be given "minimal weight." (D.E. 17 at 6.) As explained further immediately below, the Court agrees and affords relatively limited weight to the choice of forum. *Accord, e.g., Wolford*, 948 F. Supp. at 49 (collecting cases and stating that choice of forum is entitled to "virtually no weight" when case involves non-resident plaintiff and events that gave rise to the cause of action did not take place in the forum).

In this regard, caselaw teaches that when "the plaintiff does not reside in the chosen

forum and the conduct and events giving rise to the cause of action did not take place in the selected forum, the plaintiff's preference has nominal value." *Id.* (citation omitted); *accord, e.g., Commercial Union Ins. Co. v. Auto Europe, L.L.C.*, No. 01 C 6961, 2002 WL 47026, at *2 (N.D. Ill. Jan. 10, 2002) ("[T]he weight granted to the plaintiff's choice of forum is significantly diminished when the events giving rise to the cause of action took place outside the plaintiff's choice of forum.") (citation omitted); *Binz v. Iowa Interstate R.R., Ltd.*, No. 98 C 6381, 1999 WL 90642, at *1 (N.D. Ill. Feb. 10, 1999) (stating that the choice of forum "has minimal value" under such circumstances) (internal quotation marks and citations omitted). Plaintiffs do not reside in the Northern District of Illinois and do not appear to have any meaningful connection to this forum. For the cause of action, Plaintiffs claim that Defendants took an adverse action against them under 15 U.S.C. § 1681a(k) (Complaint ¶ 13), for which an adverse action notice was required under 15 U.S.C. § 1681m (*id.* ¶¶ 17-18); Defendants deny that they took an adverse action (Answer ¶ 13) and also deny the related averments and/or characterizations of the notice provided by the Response Letter. (*Id.* ¶ 17, 18.)

In relevant part, Section 1681(k) defines the term "adverse action" as an action that is "made in connection with an application that was made by, or a transaction that was initiated by, any consumer," and that is adverse to the interest of the consumer. 15 U.S.C. § 1681a(k)(1)(B)(iv). Section 1681(k) further provides that the term "adverse action" under the FCRA has the same meaning as it does under Section 1691(d)(6) of the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691 *et seq.*, and that for purposes of determining whether an action is adverse, "all appropriate final findings, decisions, commentary, and orders issued under section 1691(d)(6) of this title by the Board of Governors of the Federal Reserve System or any court

7

shall apply." 15 U.S.C. §§ 1681a(k)(1)(A), (2). The Federal Reserve Board regulations define an "adverse action" as a "refusal to grant credit in substantially the amount or on substantially the terms requested in an application . . . ." 12 C.F.R. § 202.2(c)(1) (2005).

The Court provides this context because it helps to define the disputed issues concerning the Plaintiffs' claim. In order to show that Defendants have taken an "adverse action" under § 1681a(k), Plaintiffs will apparently need to show that they "applied" for credit and that Defendants "refused" to extend them credit, all as defined under § 1681a(k), which shares the definitions of 15 U.S.C. § 1691(d)(6) and its accompanying regulations. Defendants dispute, at a minimum, many of Plaintiffs' positions regarding these issues. (*See, e.g.*, Answer ¶ 11 (denying that "Defendants determined not to extend credit to plaintiffs."); D.E. 56 at 9 (citing D.E. 56, Ex. D, Defs.' Resps. to Pls.' First Req. for Admission, Resp. No. 7, stating that "Plaintiffs never applied for credit with defendants.").)[3]

With this understanding of the cause of action, the Court has identified four factual universes of information potentially material to Plaintiffs' claim and request for statutory damages: (1) the development and drafting of the Solicitation Letter; (2) the interchange between Plaintiffs and Defendants on the phone call made in response to the Solicitation Letter; (3) the decision to mail the Response Letter to the Plaintiffs; and (4) the drafting and the sending of the

---

[3] For example, it appears that, in Defendants' view, Plaintiffs never applied for credit because, when they called CMBUSA to inquire about home equity financing, Plaintiffs were told that there likely were no loan products suitable for Plaintiffs because they were seriously delinquent on their current mortgage obligation, among other reasons. (*See* D.E. 56, Ex. C, Defs.' Supp. Resps. to Pls.' Interrogs., Interrog. No. 3). In Defendants' view, at least, the CMBUSA telephone representative then asked whether the Plaintiffs wanted to submit a credit application, and the Plaintiffs declined to do so. (*Id.*) The Court takes no position on whether the facts described in the interrogatory dialogue ultimately will be shown to constitute an application for credit or not.

8

Response Letter.[4] The parties have conducted venue discovery for several months, and therefore the Court can, with some degree of confidence, locate where these material events occurred. The process of developing and drafting the Solicitation Letter was managed out of Fort Washington, Pennsylvania (Sinn Decl. ¶ 7), which is in the Eastern District of Pennsylvania, and such letters are mailed by a third party vendor in New York. (*Id.*) Plaintiffs' phone call was initially received by ICT Group, Inc. ("ICT"), a third party vendor headquartered in Newton, Pennsylvania (also in the Eastern District of Pennsylvania), and routed to a CMBUSA call center in Fort Washington, Pennsylvania. (*Id.* ¶¶ 8, 9.) Neither Defendants nor the Plaintiffs suggest where, after the phone call, the decision to mail the Response Letter was made; however, as best the Court can tell, it was either New Jersey, where JPMorgan Chase's mortgage entities are headquartered and have their primary operations (D.E. 56 at 3 (citing D.E. 56, Ex. A, Defs.' Resps. to Pls.' Second Req. for Admission, Resp. No. 5)), or Fort Washington, Pennsylvania, where Defendants keep any records regarding the mailing of letters such as the Response Letter. (Sinn. Decl. ¶¶ 10-11.) Finally, the Response Letter was apparently drafted and reviewed for compliance in Florida, then reviewed by Defendants' marketing department in Pennsylvania, and then reviewed again by Defendants' legal department in New Jersey and compliance teams in

---

[4] Plaintiffs argue that the development and drafting of the Solicitation Letter, as well as the phone conversation, are irrelevant to their cause of action, which they characterize as solely about whether the Response Letter complied with the FCRA. (D.E. 47 at 4.) However, to show that an "adverse action" notice was required, Plaintiffs will first be required to show that there was an adverse action. *See* 15 U.S.C. § 1681a(k); 12 C.F.R. § 202.2(c)(1). Neither party has provided authority to question the idea that the representations the parties made to each other on the phone call may be relevant evidence as to whether the Plaintiffs "applied" for credit, or whether a credit decision was made. Nor have Plaintiffs provided any authority to question that events concerning the genesis of the Solicitation Letter and/or the Response Letter might bear on, for example, the appropriate assessment of statutory damages within the statutory range if any violation is ultimately shown.

New Jersey. (*See* D.E. 56 at 6 (citing D.E. 47, Ex. D (Dep. of Susan Sinn, Aug. 17, 2005) at 66-67).)

The Northern District of Illinois is noticeably absent from this summary of the locations of the events potentially relevant to this case. Put differently, Plaintiffs have not shown that any conduct or events relevant to this cause of action occurred in the Northern District of Illinois. On this point, Plaintiffs direct the Court's attention to an assortment of facts, including: JPMorgan Chase's retail financial headquarters is in Chicago (D.E. 47 at 10); JP Morgan Chase is one of the three largest banks in the United States (*id.*); and JPMorgan Chase has a greater retail lending presence in Illinois than it does in New Jersey, Rhode Island and Pennsylvania combined. (*Id.* at 11.) Although Plaintiffs have accurately captured some of the highlights of JP Morgan Chase's marketing materials, none of these facts alleges conduct or events giving rise to the cause of action in this case or even meaningfully related to the cause of action. Furthermore, precedent shows that the mere fact that a business is headquartered in the plaintiff's chosen forum is insufficient to resist a transfer motion when the balance of factors weighs in favor of the transfer. *See, e.g., Sornberger*, 2002 WL 1182121, at *2 (granting transfer motion, despite the fact that defendant was headquartered in the transferor forum, when relevant actions occurred in transferee forum); *accord Eugene v. McDonald's Corp.*, No. 96 C 1469, 1996 WL 411444, at *3 (N.D. Ill. July 18, 1996) (same).

One potentially relevant assertion by Plaintiffs is that JPMorgan Chase's "decisions concerning the mortgage lending business are made centrally and without regard to the legal entities involved" (D.E. 47 at 11); this seems to imply that mortgage decisions, including, potentially, the decision at issue in the case *sub judice*, are made in Chicago. However, as was

10

mentioned above, Defendants' centralized decisions concerning the mortgage lending business are made in New Jersey, rather than in Chicago. (D.E. 56 at 3 (citing D.E. 56, Ex. A, Defs.' Resps. to Pls.' Second Requests for Admissions, Resp. No. 5)).) The Court finds, therefore, that none of the events relevant to the cause of action has taken place in the Plaintiffs' chosen forum.

Moreover, Defendants note that in putative class action lawsuits, such as this one, the plaintiff's choice of forum is accorded diminished weight. In this regard, caselaw teaches that "[w]hen a nationwide class is alleged, less deference should be given to the plaintiff's choice of forum because any member of the class who subsequently chooses to appear might be faced with similar inconveniences, depending on where the action proceeds." *Morris*, 2004 WL 2496496, at *2 (collecting cases; internal quotation marks and citation omitted); *accord, e.g., Georgouses*, 963 F. Supp. at 730 (collecting cases and stating that for transfer analysis for putative class actions, "plaintiff's home forum is irrelevant."). Because the Court has found that Plaintiffs do not reside in the Northern District of Illinois, and that there is a lack of connection between the Northern District of Illinois and the controversy, the Court gives limited weight to the Plaintiffs' choice of forum. *See, e.g., Wolford*, 948 F. Supp. at 49 (collecting cases and stating that, under such circumstances, the choice of forum "is accorded virtually no weight"); *accord Federated Dep't Stores, Inc. v. U.S. Bank Nat'l Assoc.*, No. 00 C 6169, 2001 WL 503039, at *2 (N.D. Ill. May 11, 2001). Moreover, because Plaintiffs purport to bring a nationwide class action, and there is no basis to conclude that other putative class members would find it convenient for the action to proceed in the Northern District of Illinois, this further militates against affording significant weight to the present choice of forum. *See Eugene*, 1996 WL 411444, at *2 ("[T]he plaintiff purports to bring a nationwide class action, and thus we do not accord weight to his

11

choice of forum because other members of the putative class might be inconvenienced by the selection.") (collecting cases); *accord, e.g., Morris*, 2004 WL 2496496, at *2.

B. Situs of Material Events

The Court has already analyzed in detail the locations of the events giving rise to and relating to Plaintiffs' cause of action. As stated above, the material events took place in Pennsylvania, New Jersey and Florida—no material events occurred in Illinois.

Precedent teaches that the Court should also analyze the situs of the effects of the alleged violation. *See, e.g., Barela*, 2005 WL 770629, at *4 (analyzing the situs of "relevant events and the effects thereof"); *Reyes v. Experian Info. Sols.*, No. 03 C 3219, 2003 WL 22282515, at *2 (N.D. Ill. Oct. 2, 2003) ("[T]he material events in this case involve not just the inaccurate reporting of information, but also [the plaintiff's] efforts to correct the errors and, importantly, the injuries he claims to have suffered as a result."). In the present matter, Plaintiffs reside in Rhode Island, and it appears that any actual harm would have occurred there. However, Plaintiffs argue that they are asking only for statutory damages, and so the situs of actual damages is irrelevant. (*See* D.E. 47 at 9.) Defendants respond that "the amount of actual damages suffered is an important factor in determining the amount of statutory damages awarded, which can range from $100 to $1000" under 15 U.S.C. 1681n(a)(1)(A). (D.E. 56 at 11 (collecting cases).) To the extent that evidence of actual damages is at all important for calculating the appropriate amount of statutory damages—and common sense would indicate that such evidence is at least potentially quite meaningful, *see, e.g., Preston v. Mortgage Guaranty Ins. Corp. of Milwaukee*, No. 5:03-cv-111-Oc-10GRJ, at 9-10 (M.D. Fla. June 21, 2004) ("An award of statutory damages would . . . require considerable individual inquiries; the Court would

be disinclined to award a putative class member $1,000 if he or she only suffered an out-of-pocket loss of $9.00, or to award a putative class member $100 if he or she suffered an out-of-pocket loss of $1,000.00.")—such evidence is on the East Coast and not the Northern District of Illinois and so weighs in favor of transfer. *See, e.g., First Horizon Pharm. Corp. v. Breckenridge Pharm., Inc.*, No. 04 C 2728, 2004 WL 1921059, at *4 (N.D. Ill. July 21, 2004) (finding that transfer from Illinois to Florida was supported by the fact that most of the material documents were located in Maryland, "on the east coast").

Plaintiffs repeatedly argue that, in their view, many of the operative events in the case actually happened in the Middle District of Florida. (*See, e.g.*, D.E. 47 at 1 ("The material factual events in this case actually happened in Jacksonville, Florida and not the places where defendants suggest."); *id.* at 7 ("Most material events relating to the content of . . . [the Response Letter] happened in Jacksonville, Florida, a locale to which defendants do not suggest transfer.").) Such assertions are not, with all respect, a particularly compelling defense of the idea of keeping the case in the Northern District of Illinois, where no one seriously contends that any material events occurred. In making the assertions quoted immediately above, Plaintiffs appear to suggest that the Defendants actually should have moved to transfer the case to the Middle District of Florida. But the Defendants are not required to show that their proposed transferee forum, the Eastern District of Pennsylvania, is clearly more convenient than all other potential transferee forums in the country, such as the Middle District of Florida or elsewhere. Instead, precedent instructs that the party moving for transfer bears the burden of showing that the proposed transferee forum is clearly more convenient than the transferor forum. *See Heller Fin., Inc. v. Midwhey Powder Co. Inc.*, 883 F.2d 1286, 1293 (7th Cir. 1989); *accord Technical*

*Concepts L.P.*, 2002 WL 31433408, at *2. On the issue of the situs of material events, the Court finds that Defendants have shown that many material events occurred in Pennsylvania (and that all the material events occurred on the East Coast), and that none occurred in Illinois. Therefore, this factor weighs in favor of transfer.

C. Ease of Access to Sources of Proof

Most of the potentially relevant documents and records for this case appear to be located in Pennsylvania (*see, e.g*, D.E. 56 at 10 (citing Sinn. Decl. ¶¶ 7, 9, and 11 for the proposition that "the documents concerning the call records, drafting and mailing of solicitation letters, and records regarding the [Response Letter] . . . are kept in Fort Washington, Pennsylvania.")), and no records are located in the Northern District of Illinois. Plaintiffs argue that "records relevant to this case are can [sic] be accessed as easily in Chicago as anyplace else in the United States" (D.E. 47 at 12), a proposition that Defendants dispute. (*See* D.E. 56 at 10.) Although there is a dearth of relevant evidence in the Northern District of Illinois, because no one has argued that the relevant documents and records may not be readily transferred, the Court does not put substantial weight on this factor. *See, e.g., Barela*, 2005 WL 770629, at *4; *accord S.C. Johnson & Son v. Buzz Off Insect Shield, LLC*, No. 05 C 1046, 2005 WL 1838512, at *3 (N.D. Ill. July 28, 2005) (citation omitted).

D. Convenience of Witnesses

"The convenience of witnesses is often the most important factor in deciding whether to grant a motion to transfer." *Id.* (citation omitted); *accord Federated Dep't Stores, Inc.*, 2001 WL 503039, at *4. Further, the convenience of non-party witnesses is "substantially more important than the convenience of party witnesses because the latter are within the party's control." *First*

14

*Horizon Pharm. Corp.*, 2004 WL 1921059, at *4; *accord, e.g., S.C. Johnson & Son*, 2005 WL 1838512, at *3. In assessing this factor, the Court must consider the number of witnesses in each forum and the importance of their testimony. *See, e.g., Federated Dep't Stores, Inc.*, 2001 WL 503039, at *4. Accordingly, the party seeking transfer must specify the key witnesses to be called and make a generalized statement of their testimony. *Id.* at *4 (citing *Heller Fin., Inc.*, 883 F.2d at 1293).

In the case *sub judice*, Defendants have named two key party (CMBUSA) witnesses, one in New Jersey and one in Pennsylvania, and have described the relevance of their testimony. (*See* D.E. 17 at 10 (citing Sinn. Decl. ¶ 12).) As for non-party witnesses, Defendants have also suggested that they will be relying on testimony from employees from Pennsylvania-based ICT (including, potentially, ICT's custodian of records), and on testimony from Ms. Sinn, who no longer works for Defendants, and who is located in New Jersey, where she works for a different bank. (*See* D.E. 56 at 9-10.) Testifying in Pennsylvania would certainly be more convenient for these non-party witnesses. In addition, the ICT witnesses would be under the subpoena power of the court in the Eastern District of Pennsylvania, but not in the Northern District of Illinois. Neither party has suggested that they will call any witnesses located in the Northern District of Illinois. Therefore, the Court finds that, given that all of the witnesses heretofore identified are located on the East Coast, considerations of convenience weigh in favor of transferring the present action to the Eastern District of Pennsylvania. *See, e.g., Friskit, Inc. v. Realnetworks, Inc.*, No. 03 C 4505, 2003 WL 22433106, at *3 (N.D. Ill. Oct. 24, 2003) (finding that transfer to the Northern District of California was favored by the fact that most of the witnesses were located in San Francisco or elsewhere on the West Coast).

15

E.  Convenience to Parties

In analyzing the convenience of the parties, the Court considers the parties' respective residences and abilities to bear the expense of trial in each forum. *First Horizon Pharm. Corp.*, 2004 WL 1921059, at *4 (citation omitted). Plaintiffs do not reside in the Northern District of Illinois, and all parties would face the expense of flying from the East Coast to reach this forum. The Eastern District of Pennsylvania is substantially closer to Plaintiffs' residence in Rhode Island, and to the Defendants' headquarters in New Jersey and Delaware, and is easily accessible by car, train or plane from these locations. Moreover, as discussed above, several key party witnesses for Defendants live in Pennsylvania—transferring this case would reduce the travel cost and the lost productivity attributable to their testimony.

Plaintiffs argue that "[a]s a national class action, the filing of this case in a centrally-located forum is desirable." (D.E. 47 at 11.) To support this argument, Plaintiffs cite three multidistrict litigation cases where cases were transferred to fora in the center of the country by the MDL panel. (*Id.* (citing *In re Baycol Prods. Liability Litig.*, MDL No. 1431, 180 F. Supp. 2d 1378 (J.P.M.L. 2001) (locating MDL pretrial proceedings in the District of Minnesota); *In re "Cardizem CD" Antitrust Litig.*, MDL No. 1278, 1999 U.S. Dist. LEXIS 9285 (J.P.M.L. June 11, 1999) (locating MDL pretrial proceedings in the Eastern District of Michigan); *In re Old Kent Mortgage Co. Yield Spread Premium Litig.*, MDL No. 1246, 1998 U.S. Dist. LEXIS 15833 (J.P.M.L. Oct. 7, 1998) (locating MDL pretrial proceedings in the District of Minnesota)).) With all respect, these cases prove little, if anything; multidistrict litigation is routinely centered all over the country, including in the Eastern District of Pennsylvania, and in all of the judicial districts on the East and West Coasts. Moreover, Plaintiffs cite no case, nor has the Court found

any, where a court addressing a venue transfer motion for a putative class suit found persuasive the mere fact that one of the venues was "centrally located;" obviously, the Central time zone has no presumptive hold on nationwide class suits. Finally, in this regard, the Court notes that the Eastern District of Pennsylvania includes some of America's major metropolitan areas and is well within a network of transportation routes spanning the East Coast and the nation. There can be no serious contention that anyone will have trouble traveling to a judicial district that includes, for example, the City of Philadelphia, with all of its transportation resources.

Given the factors in the case, the Court finds that the convenience of the parties supports transfer of the case. *See, e.g., Gen. Accident Ins. Co. v. Travelers Corp.*, 666 F. Supp. 1203, 1207 (N.D. Ill. 1987) ("The consideration is not which geographical locale is most centrally located, but which locale, having a *substantial* connection to the litigation, is most convenient.") (emphasis in original).

III. Public Interests

Courts look at public interest factors as well as private interest factors when analyzing transfer questions. When courts analyze public interests concerning a putative transfer, they typically look at the relative speed of litigation in the fora at issue, the relative competency of the fora to address disputed legal questions, and the desirability of resolving controversies in their home locale. *See, e.g., Morris*, 2004 WL 2496496, at *2 (citing *Von Holdt*, 887 F. Supp. at 188). In assessing these "interest of justice" factors, the analysis relates to the "efficient functioning of the courts...." *Id.* at *4.

F. Speed That Case Will Proceed to Trial

When evaluating the speed of the litigation in the two fora, courts consider both "(1) the

17

median months from filing to disposition for civil cases and (2) the median months from filing to trial for civil cases." *Plotkin*, 168 F. Supp. 2d at 904 (citation omitted). Defendants present evidence showing that both indicators favor the Eastern District of Pennsylvania. The Judicial Caseload Profile of the U.S. District Courts shows that in 2004, the median time from filing to disposition was 1.0 month in the Eastern District of Pennsylvania, versus 5.9 months in the Northern District of Illinois. (*See* D.E. 56, Ex. E.) Likewise, in 2004, the median time from filing to trial was 16.0 months in the Eastern District of Pennsylvania, compared to 28.4 months in the Northern District of Illinois. (*See id.*) Moreover, common sense suggests that the litigation will move more quickly in a venue close to key witnesses and evidence, and where such witnesses are within the court's subpoena power. (*See* D.E. 17 at 12.) Therefore, the interests of justice favor transfer because this case is likely to proceed more quickly in the transferee forum.

G. Familiarity With The Applicable Law

In a case that hinges on federal law, precedent teaches that the respective courts' familiarity with applicable law is a neutral factor. *See Barela*, 2005 WL 770629, at *5 (stating that both the transferor and the transferee federal district courts were "more than capable" of deciding a case involving the FCRA); *accord, e.g., Morris*, 2004 WL 2496496, at *4 (reaching similar conclusion for case involving the federal securities laws). Although not material to the Court's result, the Court accordingly rejects Plaintiffs' argument that it should take into account the relatively high number of FCRA cases filed in the Northern District of Illinois. (*See* D.E. 47 at 13.) The courts of the Eastern District of Pennsylvania are eminently capable of interpreting and applying the FCRA. Accordingly, this Court finds that the factor neither weighs for nor

against transfer.

H.   Desirability of Resolving Controversies in Their Locale

Finally, as has been emphasized throughout this opinion, no material event or effect relating to this controversy took place in the Northern District of Illinois, while many of the material events took place in or near the Eastern District of Pennsylvania. Therefore, transfer is consistent with the "guiding principle . . . that the administration of justice will be served more efficiently when the action is brought before a court that is closer to the action." *See Barela*, 2005 WL 770629, at *5 (internal quotation marks and citation omitted).

IV.   Balancing The Interests

In conclusion, the Court finds that the private and public interests overwhelmingly weigh in favor of transferring the present action to the Eastern District of Pennsylvania. No factor positively supports resolving this case in the Northern District of Illinois, not even the fact that Plaintiffs chose this forum, given the circumstances surrounding the case as framed. The Eastern District of Pennsylvania better serves the private interests at stake because it will be a more convenient and affordable venue for both Plaintiffs and Defendants. Furthermore, transfer will serve the public interest in efficient and locally-based adjudication. Therefore, the Court grants the motion.

## CONCLUSION

For the foregoing reasons, Defendants' motion to transfer venue to the Eastern District of Pennsylvania is granted.

So ordered.

*Mark Filip*
Mark Filip
United States District Judge
Northern District of Illinois

Date: 12-12-05